

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALEJANDRO ORONA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:12-CV-662-A |
| | § | |
| WILLIAM STEPHENS, Director,[1] | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Alejandro Orona, a state prisoner currently incarcerated in New Boston, Texas, against William Stephens, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

---

[1]Effective June 1, 2013, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice and "is automatically substituted as a party." FED. R. CIV. P. 25(d).

## I.  Factual and Procedural History

On May 18, 2009, a jury found petitioner guilty of murder in the 396th District Court of Tarrant County, Texas, and assessed his punishment at life imprisonment.  (SHR[2] at 50)  Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.  (SHR at 54-77)  *Orona v. State*, PDR No. 445-11.  Petitioner also filed a state application for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court.  (SHR at cover)

The appellate court summarized the evidence as follows:

Scott Sartain was a methamphetamine user and an insulin-dependent diabetic.  He stole his grandmother's checkbook, forged a check, and got his friend Natalie Bazan to cash it.  The bank confirmed that the check was forged, and police arrested Bazan.  Bazan's husband, Brian Johns, was upset about Bazan's arrest, and after Johns bailed her out of jail, the two confronted Sartain at Orona and Kelly Munn's house, where Sartain was staying at the time.

Johns and Bazan found Sartain in a back room with Munn and confronted him.  Johns and Bazan both hit Sartain, and when Sartain started to leave, Munn "just

_____

[2]"SHR" refers to the state court record of petitioner's state habeas application no. WR-77,613-01.

2

started jumping on him." Orona came into the room and joined in the beating, kicking and hitting Sartain. Munn said, "Go to sleep, bitch," while hitting Sartain. Sartain covered his head and was knocked to the ground. Bazan and some of the other people at the house yelled for Orona and Munn to stop, but they continued kicking and hitting Sartain. Bazan, Johns, and the other people in the house fled as the beating continued.

Melissa Morante–who had fled the house during the fight–returned the following day. Orona and Munn were playing loud music, and Morante could hear moans coming from the garage. Munn and Orona had blood on their shoes. Both told Morante that Sartain was in the garage. Rebecca Brauer, who had heard about the beating, also went to Orona and Munn's house a few days after the fight. In front of Brauer, Munn told Orona that he needed to feed and water the "dog" and pointed toward the garage. Daniel Osborne[3], a friend of Munn's, went to the house after the fight, and Munn told Osborne that he and Orona had beaten Sartain because he owed them money; Munn asked Osborne to check on Sartain in the garage, but Osborne did not because he "didn't want to believe it."

Days after the fight, Munn called Johns and asked him to bring over some Fabuloso floor cleaner. When Johns arrived, the house smelled like "rotten garbage" and was freezing inside. He noticed that dryer sheets had been placed in all of the air-conditioning vents. Orona and Munn came out of a back room, and Johns could see a hacksaw and knives on a table in that room. He saw Munn hold up Sartain's severed head. Johns ran out of the house and to a nearby motel to tell friends what he had seen.

Osborne returned to Munn and Orona's house a second time and noticed that it "smelled like hot garbage and nasty meat." Munn and Orona were cleaning

---

[3]The state appellate court refers to Dennis Osborne in its opinion as "Daniel Osborne."

the house-mopping with Fabuloso cleaner and taking out
the trash.  Munn and Orona had rubbed Vicks vapor rub
over their noses.  Munn told Osborne that they had cut
up Sartain's body, and Munn asked for Osborne's help
disposing of it.  Osborne refused, but he later helped
them load Sartain's car and a bathtub full of trash
bags and brush onto a trailer.  Some acquaintances of
Munn and Orona's drove the trailer to a rural area near
Waco, where more acquaintances cut up Sartain's car for
scrap metal and burned the trash bags.

Police got a tip about a murder a few months
later.  They eventually tracked down witnesses.
Sartain's body was never found.  Approximately seven
months after the beating, police searched Orona and
Munn's house for evidence of a murder.  Orona and Munn
no longer lived there.  Police applied a chemical that
can detect blood to the walls and floors.  Although it
showed some areas that could have blood on them, police
were unable to remove those areas for further testing
before the chemicals destroyed the potential DNA
samples.  DNA samples that the police took from
baseboards in the house did not test positive for
Sartain's blood.

(SHR at 55-57)[4]

## II.  Issues

Petitioner raises the following grounds for habeas relief:

(1)   The trial court erred in admitting the hearsay
      evidence of Brian Johns, Dennis Osborne and
      Rebecca Brauer;

(2)   The trial court refused a lesser-included offense
      charge of negligent homicide and/or assault
      causing bodily injury;

---

[4]Kelly Munn was also convicted for murder and engaging in
organized criminal activity for his involvement in Sartain's
murder.

4

     (3)   The evidence introduced at trial was insufficient
           to prove his use of a deadly weapon;

     (4)   The evidence introduced at trial was legally
           insufficient to sustain his conviction; and

     (5)   The evidence introduced at trial was factually
           insufficient to sustain his conviction.

(Pet. at 6-7b; Pet'r Mem. at 3-4)

### III.   Rule 5 Statement

Respondent believes petitioner has exhausted his state court remedies as to the claims raised as required by 28 U.S.C. § 2254(b)(1). (Resp't Ans. at 4-5) Respondent does not believe the petition is barred by limitations, or subject to the successive petition bar. *Id.* § 2244(b), (d).

### IV.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court. 28 U.S.C. §
2254(d). A decision is contrary to clearly established federal
law if the state court arrives at a conclusion opposite to that
reached by the Supreme Court of the United States on a question
of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts.
*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.
Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court
decision will be an unreasonable application of clearly
established federal law if it correctly identifies the applicable
rule but applies it unreasonably to the facts of the case.
*Williams*, 529 U.S. at 407-08.

    Further, federal courts give great deference to a state
court's factual findings. *Hill*, 210 F.3d at 485. Section
2254(e)(1) provides that a determination of a factual issue made
by a state court shall be presumed to be correct. 28 U.S.C. §
2254(e)(1). This presumption applies to both explicit findings
of fact and "those unarticulated findings which are necessary to
the state court's conclusions of mixed law and fact." *Valdez v.
Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). The petitioner
has the burden of rebutting the presumption of correctness by
clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the

6

Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[5]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

### (1) and (2)   Trial Court Error

Petitioner asserts the trial court erred in admitting the hearsay evidence of Brian Johns, Dennis Osborne and Rebecca Brauer regarding statements Munn, who did not testify, made to them. (Pet'r Mem. at 7-12)  In *Crawford v. Washington*, the Supreme Court held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial and the defendant lacked a prior opportunity for cross-examination, even if the statement falls

---

[5]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

under a hearsay exception. *Crawford v. Washington*, 514 U.S.

36,53-54 (2004). The Supreme Court declined to spell out a

comprehensive definition of testimonial, but it stated that the

term "applies at a minimum to prior testimony at a preliminary

hearing, before a grand jury, or at a former trial; and to police

interrogations." *Id.* at 68.

Applying *Crawford*, Texas Rule of Evidence 803(24), and

relevant state law, the state appellate court addressed the issue

as follows:

### A.   Statements at Issue

Johns testified that he was in his car at a
stoplight when Munn jumped into his car. Over defense
counsel's hearsay and Confrontation Clause objections,
Johns testified to the encounter with Munn as follows:

> [Munn] was asking me, he goes, I know
> the police talked to you, I need to know what
> you told them. I said there was nothing to
> tell them, you know. I can't tell them
> anything I don't know . . . . He asked me if
> I still lived in the same spot, and he said
> the wrong street. I'm like, yeah. He goes,
> no, you stay on this street. He goes, if I
> need you, I know where to find you.

Johns took Munn's statements as a threat.

Brauer testified, over defense counsel's hearsay
and Confrontation Clause objections, that she was at
Munn and Orona's house one day when Munn told Orona in
front of her to feed and water his dog as he pointed to
the garage. Brauer explained that, to her knowledge,
Orona did not have a dog.

8

Osborne testified, again over defense counsel's hearsay and Confrontation Clause objections, that Munn confided in him that he and Orona "beat on Sartain," "just whooped his ass," because Sartain owed them money.

## B. Confrontation Clause Objections

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Sixth Amendment right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment.

A trial court violates an accused's Sixth Amendment rights by admitting a hearsay statement made by a nontestifying declarant if the statement was testimonial and the accused lacked a prior opportunity for cross-examination.  The threshold issue in our *Crawford* analysis is whether the statements at issue were testimonial.  The Supreme Court declined to spell out a comprehensive definition of testimonial, but it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."

Generally, a co-conspirator's statements made in furtherance of the conspiracy are nontestimonial. Moreover, casual remarks made spontaneously to acquaintances are not testimonial in nature.  We review the question of whether a statement is testimonial or nontestimonial de novo.

In this case, all of the complained-of testimony was nontestimonial in nature.  Munn was a co-conspirator, and the statements he made to Johns after the murder-about talking to the police and knowing where to find Johns-were made in furtherance of the conspiracy in order to conceal Sartain's murder. Similarly, by referring to Sartain as "the dog" in

9

front of Brauer, Munn was attempting to hide from
Brauer the fact that Sartain was in the garage.  And
Munn's statement to Osborne that he and Orona had "beat
on Sartain" was a spontaneous, volunteered statement
made in front of acquaintances.  Nothing about the
context of Munn's statements to Johns, Brauer, and
Osborne would lead an objectively reasonable witness to
believe that the statements would be available for use
later at trial.  Consequently, we conclude that the
trial court did not err by admitting the complained-of
statements over Orona's Confrontation Clause objection.

### C. Hearsay Objections

Hearsay is a "statement, other than one made by
the declarant while testifying at the trial or hearing,
offered in evidence to prove the truth of the matter
asserted."  But a statement meeting that definition is
nevertheless not hearsay if it is offered against a
party and is a statement made by a co-conspirator
"during the course and in furtherance of the
conspiracy."  The out-of-court statement by a co-
conspirator must be more than merely related to the
conspiracy; it must further the conspiracy.

Furthermore, a statement that, at the time of its
making, so far tended to subject the declarant to
criminal responsibility that a reasonable person in
declarant's position would not have made the statement
unless believing it to be true is an exception to the
general hearsay rule.  Statements against interest
"must be self-inculpatory with corroborating
circumstances to indicate the trustworthiness of the
statement[s]" to be admissible under rule 803(24).
Both statements that are directly against the
declarant's interest and collateral "blame-sharing"
statements may be admissible under rule 803(24) if
corroborating circumstances clearly indicate their
trustworthiness.

We review a trial court's decision to admit or to
exclude evidence under an abuse of discretion standard.
A trial court does not abuse its discretion as long as

10

the decision to admit or to exclude the evidence is within the zone of reasonable disagreement.

Here, as we explained above in our Confrontation Clause analysis, Munn was a co-conspirator, and the statements he made to Johns and in front of Brauer after the murder were made in furtherance of the conspiracy in order to conceal Sartain's murder.[FN3] Consequently, those statements were not hearsay, and the trial court did not abuse its discretion by admitting them over Orona's hearsay objection.

What remains is Munn's statement to Osborne that he and Orona "beat on Sartain," "just whooped his ass." This statement equally exposes Munn and Orona to criminal responsibility for assaulting Sartain.  And the trustworthiness of the statement is corroborated by other testimony in the record showing that Munn and Orona beat up Sartain; Johns testified that he witnessed Munn and Orona beat up Sartain, Brauer and Morante both testified that they saw blood on Orona's and Munn's shoes, and Craven testified that Munn showed him photographs of Sartain in which his head looked "like a melon."  Because the statement at issue was admissible under rule 803(24) as a statement against interest, the trial court did not abuse its discretion by admitting it over Orona's hearsay objection.

(SHR at 70-76) (footnote and citations omitted)

The issue of whether Munn's out-of-court statements constitute exceptions to the hearsay rule under rule 803(24) is governed by state law and is not cognizable on federal habeas review.  *Cupit v. Whitley*, 29 F.3d 532, 536 (5th Cir. 1994).  On the other hand, whether admission of Munn's out-of-court statements violate petitioner's confrontation rights is a matter of federal law.  *Lilly v. Virginia*, 527 U.S. 116, 125 (1999);

11

*Fratta v. Quarterman*, 536 F.3d 485, 503-04 (5th Cir. 2008).
Clearly, Munn was under the impression that his statements would
remain secret.  The statements were not made by him with the
reasonable belief that they would be used in a later trial and
were nontestimonial in nature.  The state court's determination
of the issue is reasonable under *Crawford*.

Petitioner also asserts the trial court erred by refusing a
lesser-included offense charge of negligent homicide and/or
assault causing bodily injury.  (Pet'r Mem. at 13-22)  It is
well-settled that in a noncapital case "the failure to give an
instruction on a lesser included offense does not raise a federal
constitutional issue." *Creel v. Johnson,* 162 F.3d 385, 390 (5th
Cir. 1998) (citation omitted).  It is beyond this court's habeas
authority to question a state court judgment on the state court
jury instruction issue when no constitutional question exists.
*Wood v. Quarterman,* 503 F.3d 408, 413 (5th Cir. 2007) ("[I]t is
not the province of a federal habeas court to reexamine state-
court determinations on state-law questions.") (quoting *Estelle
v. McGuire,* 502 U.S. 62, 67-68 (1991)).  Petitioner is not
entitled to habeas relief under grounds one or two.

### *(3), (4) and (5)  Sufficiency of the Evidence*

Petitioner claims the evidence was legally and factually insufficient to prove that he used a deadly weapon, that Sartain is, in fact, deceased, or that he caused Sartain's death. (Pet'r Mem. at 23-38)  Petitioner challenged both the legal and factual sufficiency of the evidence on direct appeal, however, in light of the Texas Court of Criminal Appeals's holding in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), the appellate court analyzed petitioner's insufficiency arguments under only the familiar legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  (Pet'r Mem. at 23-24; SHR 57-63) Likewise, for purposes of federal habeas corpus review, a state conviction need only satisfy *Jackson v. Virginia* legal sufficiency standard.  *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005).

The inquiry in a legal-sufficiency analysis requires only that a reviewing court determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319. Direct and circumstantial evidence are weighed equally, and it is not necessary that the evidence exclude every reasonable

13

hypothesis of innocence. *United States v. Mendoza,* 226 F.3d 340,
343 (5th Cir. 2000). In conducting a *Jackson* review, a federal
habeas court may not substitute its view of the evidence for that
of the fact finder, but must consider all of the evidence in the
light most favorable to the prosecution, with all reasonable
inferences to be made in support of the jury's verdict. *United
States v. Moser,* 123 F.3d 813, 819 (5th C ir. 1997); *Weeks v.
Scott,* 55 F.3d 1059, 1061 (5th Cir. 1995). Where a state
appellate court has conducted a thoughtful review of the
evidence, its determination is entitled to great deference.
*Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Based on the evidence adduced at trial, the state appellate
court, applying the *Jackson* standard, addressed the issue as
follows:

### B. Sufficiency of Evidence to Prove Murder

In his fifth and sixth points, Orona argues that
the evidence is insufficient to prove that Sartain is
deceased or to prove the cause of his death.
Specifically, he argues that Sartain's body was never
found, that no witness testified to seeing Sartain's
murder, and that the evidence suggests that Sartain "is
hiding from his family, his enemies, or the law."

A person commits the offense of murder if he
intentionally or knowingly causes the death of an
individual. A person acts "intentionally," or with
intent, with respect to the nature of his conduct or to
a result of his conduct when it is his conscious

14

objective or desire to engage in the conduct or cause
the result. A person acts "knowingly," or with
knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to
cause the result. *Id.* § 6.03(b).

In a homicide case, the State is not required to
produce a body. In this case, the jury charge
included, and the indictment alleged, several manners
and means by which Orona murdered Sartain: by a manner
and means unknown to the grand jury, or

> by kicking [Sartain] with his feet or by
> punching him with his hands or by preventing
> [him] from obtaining insulin in sufficient
> quantities to prevent his death when [Orona]
> knew that . . . Sartain was an insulin-
> dependent diabetic, or by a combination of
> any or all of the aforementioned means.

The evidence demonstrates that Orona and Munn
kicked and punched Sartain, continued to do so despite
the pleas of others in the house to stop, and put
Sartain in their garage after beating him. Two
witnesses testified that Orona had blood on his shoes
after the incident. Morante testified that the day
after the fight, she heard moans coming from the garage
over the sound of loud music and that both Munn and
Orona told her that Sartain was in the garage. Brauer
testified that she heard Munn tell Orona to feed and
water "the dog" as he pointed to the garage. Munn told
Osborne that Sartain owed him and Orona money and that
they beat Sartain and put him in the garage.

During oral argument to this court, Orona's
appellate counsel admitted that evidence shows that
Sartain was severely beaten, but he argued that no
evidence shows that Sartain is now deceased. To the
contrary, evidence exists that Sartain died at some
point after the beating and that Munn and Orona
disposed of his body with the help of their friends.
Munn told Osborne, in front of Orona, that Sartain had
died "during [Orona's] shift of watching him" and that

Munn knew Sartain was an insulin-dependent diabetic and
was trying to find him insulin.  Sartain required at
least two insulin shots daily, and he often stayed with
people who had refrigerators so that he could store his
insulin.  His diabetes was so severe that, without
insulin, he could go into a diabetic coma and die
within twenty-four hours; physical injuries could also
exacerbate his diabetes.

Several witnesses described a foul odor at the
house days after the beating and saw Orona and Munn
cleaning with Fabuloso cleaner.  Orona and Munn turned
down the air conditioner, put dryer sheets over the
air-conditioning vents, and rubbed Vick's vapor rub on
their noses.  Johns saw Munn hold up Sartain's severed
head, and another witness testified that Munn said he
and Orona had cut up Sartain's body.  Witnesses
testified that Munn and Orona had acquaintances haul
Sartain's car and a bathtub full of trash bags to a
rural area to be burned and disposed of.  After the
beating, none of Sartain's family and friends ever
heard from him again; Sartain's cell phone records show
that his phone was disconnected for lack of payment two
months after the beating.  Sartain's mother testified
that, after the forgery incident, she told Sartain that
she never wanted to see him again.  But she also
explained that he was very close with his grandmother
and would go to her house for lunch or dinner almost
daily although he had not attempted to contact her
since the check-forgery incident.

Orona also argues that insufficient evidence
exists to show that he knew that Sartain was an
insulin-dependent diabetic; consequently, Orona argues
that he could not have intentionally or knowingly
caused Sartain's death by preventing him from obtaining
insulin in sufficient quantities to prevent his death.
When, as here, a jury returns a guilty verdict on an
indictment charging several alternate manners and
means, the verdict stands if the evidence is sufficient
with respect to any of the acts charged.  Not only was
there evidence tending to show that Orona knew that
Sartain was an insulin-dependent diabetic and that

16

Orona deprived him of insulin, but evidence existed to
show that Sartain's death was caused by Orona's kicking
or punching him or by a combination of any or all of
the alleged manners and means.

Viewing the evidence in the light most favorable
to the jury's verdict, we hold that a rational trier of
fact could have found beyond a reasonable doubt that
Sartain is not hiding but is, in fact, deceased and
that Orona caused Sartain's death by one, or a
combination, of the manners and means alleged in the
indictment, that is, by kicking Sartain, punching him,
depriving him of insulin when Orona knew he needed it
to survive, or a combination of these manners and
means. Accordingly, we hold that the evidence is
legally sufficient to support Orona's conviction. We
overrule Orona's fifth and sixth points.

### C.  Deadly Weapon Finding

In his seventh and eighth points, Orona argues
that the evidence is insufficient to prove that he used
a deadly weapon. However, the jury was not asked to
make a deadly weapon finding, and the trial court did
not enter a deadly weapon finding in the judgment.
Consequently, we overrule Orona's seventh and eighth
points.

(SHR at 59-63) (footnote & citations omitted)

Having conducted an independent inquiry as to sufficiency

under the *Jackson* standard, the state court's disposition of the

legal sufficiency-of-the-evidence claims appears consistent with

*Jackson*. Thus, the state court's determination is entitled to

the appropriate deference. A circumstantial case is built upon

reasonable inferences from all the relevant circumstances. And,

as noted in the state court's opinion, it was the jury's unique

17

role to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh the evidence in drawing inferences from basic facts to ultimate facts. *Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982); *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 2009). Petitioner is not entitled to habeas relief under grounds three, four or five.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED July __17__, 2013.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

18